# United States Court of Appeals for the Federal Circuit

---

**DAI GLOBAL, LLC, FKA DEVELOPMENT ALTERNATIVES, INC.,**
*Appellant*

**v.**

**ADMINISTRATOR OF THE UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT,**
*Appellee*

---

2019-1330

---

Appeal from the Civilian Board of Contract Appeals in Nos. 5942, 5943, 5944, 5945, 5946, Administrative Judge Jonathan D. Zischkau, Administrative Judge Catherine B. Hyatt, Administrative Judge Jeri Kaylene Somers.

---

Decided: December 27, 2019

---

JONATHAN DAVID SHAFFER, Smith, Pachter, McWhorter, PLC, Vienna, VA, argued for appellant. Also represented by ARMANI VADIEE; TODD MATTHEW GARLAND, ZACHARY DAVID PRINCE, Tysons Corner, VA.

GEOFFREY MARTIN LONG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also

represented by JOSEPH H. HUNT, ROBERT EDWARD KIRSCHMAN, JR., PATRICIA M. MCCARTHY.

———————————

Before MOORE, SCHALL, and TARANTO, *Circuit Judges.*

MOORE, *Circuit Judge.*

DAI Global, LLC (DAI), formerly known as Development Alternatives, Inc., appeals a decision by the Civilian Board of Contract Appeals (Board) dismissing DAI's five appeals for lack of jurisdiction. *See Developmental Alts., Inc. v. Agency for Int'l Dev.*, CBCA No. 5942, CBCA 5943, CBCA 5944, CBCA 5945, CBCA 5946, 18-1 BCA ¶ 37147. Because the Board has jurisdiction to consider DAI's appeals, we reverse and remand.

## BACKGROUND

From 2006 to 2010, the United States Agency for International Development (USAID) awarded DAI five contracts for developmental services in Afghanistan. DAI subcontracted with a private security company, ERSM (Afghanistan) Limited, d/b/a Edinburgh International (EI). EI employed over 1,000 individuals to provide DAI with security services. On April 1, 2011, Afghanistan imposed a nearly $2 million fine on EI based on the size and composition of EI's private security workforce. EI paid the fine and allocated a portion of the expense to each of DAI's five contracts.

On May 10, 2017, DAI submitted a cover letter and EI's five claims to USAID, seeking reimbursement for the fine. DAI's cover letter characterized itself as a certification. Along with each claim, DAI also included EI's certification stating that the claim was made in good faith. On July 10, 2017, USAID's contracting officer sent DAI a letter stating that she would provide a decision on the claims by August 24, 2017. On July 19, 2017, 70 days after DAI submitted its claims, the contracting officer sent a second letter

informing DAI that the submission did not contain a contractor certification.

On November 20, 2017, DAI filed five notices of appeal with the Board. The Board dismissed DAI's claims on September 27, 2018, for lack of jurisdiction based on DAI's failure to certify the claims. The Board stated that DAI's May 10, 2017 certification bears no resemblance to the required statutory language. The Board also stated that only technical errors are correctable, and that DAI made its certification with reckless disregard for the certification requirements. It concluded that nontechnical mistakes in the certification and DAI's recklessness rendered DAI's purported certification unsalvageable. DAI appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(10).

## DISCUSSION

We review a contract board's decision on a question of law de novo. *Agility Logistics Servs. Co. KSC v. Mattis*, 887 F.3d 1143, 1148 (Fed. Cir. 2018). Whether a contract board has jurisdiction over an appeal is such a question. *Id.*

A government contractor seeking payment on a government contract must submit a claim to the contracting officer. 41 U.S.C. § 7103(a)(1). When the claim is for more than $100,000, an individual authorized to bind the contractor must certify that:

(A) the claim is made in good faith;

(B) the supporting data are accurate and complete to the best of the contractor's knowledge and belief;

(C) the amount requested accurately reflects the contract adjustment for which the contractor believes the Federal Government is liable; and

(D) the certifier is authorized to certify the claim on behalf of the contractor.

*Id.* § 7103(b)(1).[1]  However, "[a] defect in the certification of a claim does not deprive a court or an agency board of jurisdiction over the claim." *Id.* § 7103(b)(3).  Rather, when a certification is "defective," the "court or agency board shall require a defective certification to be corrected." *Id.*

DAI argues that the Board erred in dismissing its appeals for lack of jurisdiction based on nontechnical defects and reckless or negligent disregard for the certification requirements.  Appellant's Br. at 16–19.  We agree.  Contrary to the Board's statement of the law, there is no statutory requirement that a defect in a certification be merely "technical" to be correctable.  *See Developmental Alts., Inc.*, CBCA 5942 at 8.  Nor is there a statutory basis for finding a defective certification uncorrectable based on "intentional, reckless, or negligent disregard for the applicable certification requirements." *See id.*  In reaching the opposite conclusion, the Board relied on the text of an unenacted version of the governing statute, which passed only in the Senate:

> If the certification of a claim pursuant to this Act is *technically* defective, a court or agency board of contract appeals may permit the certification to be corrected at any time prior to a final decision by the court or agency board of contract appeals *unless the*

---

[1]    The particular language required to certify a claim is prescribed by regulation:

> I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

48 C.F.R. § 33.207(c).

*failure properly to certify in the first instance was fraudulent, in bad faith, or with reckless or grossly negligent disregard of the requirements of the relevant statutes or regulations.*

138 Cong. Rec. 21,033, 21,036 (1992) (emphasis added). The House removed the italicized language from the legislation prior to its vote. *Id.* at 31,172, 31,174. The Senate adopted the House version and it was signed into law. *Id.* at 33,632, 33,635.

The statute, as enacted, mentions only "defective certification[s]" without reference to the technical nature of the defect or mens rea. *See* 41 U.S.C. § 7103(b)(3). It is axiomatic that a statute should not be read to implicitly include language specifically rejected by Congress. *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 442 (1987). The Board's statement to the contrary, declaring the differences to be irrelevant, is erroneous and inconsistent with the plain language of the statute itself. *See Developmental Alts., Inc.*, CBCA 5942 at 9 n.3 (citing *Engineered Demolition, Inc. v. United States*, 60 Fed. Cl. 822, 828–29 (2004)). We hold that § 7103(b)(3) does not limit defects to those that are technical in nature nor does it limit a contractor's right to correct a defect if the initial certification was made with "intentional, reckless, or negligent disregard for the applicable certification requirements." *See id.* at 8.

The plain language of the statute that "[a] defect in the certification of a claim does not deprive a court or an agency board of jurisdiction over the claim" requires that we reverse the contract board's contrary conclusion. The contract board erred in its statutory interpretation regarding a defective certification.

DAI argues that its May 10 submission to USAID contained a defective certification. Appellant's Br. at 11–16. Under a proper reading of the statute, DAI is correct that its submission constitutes a defective certification. The May 10, 2017 cover letter conveys a clear intent to certify

the underlying claims and expressly states that it is an attempt to comply with the Contract Disputes Act:

> As DAI believes there is a sound basis for these claims, we are sponsoring these . . . certified claims. [EI], DAI's Security Service Provider, was not able to receive an exemption to the five-hundred-person [c]ap imposed by the changes in the local laws of [Afghanistan]. Therefore, [EI] incurred the resulting fines during [its] performance under the above-referenced awards.

> Given that [EI] is the real party in interest and is the only one who can logically and realistically certify these claims, DAI hereby submits this certification in satisfaction of the requirements of the Contract Disputes Act. As DAI is not the real party in interest, DAI must accept and rely on the [EI] certification at face value. In addition, DAI has no knowledge, which suggests that [EI] has knowingly or intentionally failed to comply with the requirements of the Contract[] Disputes Act or has acted in bad faith.

J.A. 29. EI's certifications, which mirror the certification language required by 48 C.F.R. § 33.207(c), further evidence an intent to certify the claims:

> I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the subcontractor believes DAI and the Government to be liable; and that I am duly authorized to certify the claim on behalf of the subcontractor.

*See, e.g.*, J.A. 47.  Taken together, these documents are sufficient to constitute a defective certification within the meaning of § 7103(b)(3).[2]

A contracting officer must, within 60 days of receiving a submitted certified claim, issue a decision or notify the contractor of the time within which a decision will be issued.  41 U.S.C. § 7103(f)(2).  If the contracting officer fails to issue a decision in the specified time, the claim is deemed denied and becomes appealable to the Board.  *Id.* §§ 7103(f)(5), 7105(e)(1)(B).  The contracting officer is relieved of the obligation to issue a decision, however, if "within 60 days after receipt of the claim, the contracting officer notifies the contractor in writing of the reasons why any attempted certification was found to be defective."  *Id.* § 7103(b)(3).

It is undisputed that the contracting officer failed to notify DAI of the defect within the statutory period.  Appellee's Br. at 28.  DAI submitted its claims on May 10, 2017 and did not receive notice of the defect until July 19, 2017, more than 60 days after DAI filed its claim.  The contracting officer was therefore required to issue a decision on DAI's claims.  *See* 41 U.S.C. §§ 7103(f)(2), (b)(3).  But the contracting officer failed to do so.  Because the contracting officer failed to issue a decision within the statutory period, DAI's claim was deemed denied and became appealable to the Board.  41 U.S.C. §§ 7103(f)(5), 7105(e)(1)(B).

### CONCLUSION

Because the Board has jurisdiction over DAI's appeals of its deemed denied claims, we reverse the Board's decision and remand for further proceedings.

### REVERSED AND REMANDED

---

[2]     We do not decide whether DAI's May 10, 2017 cover letter alone constitutes a "defective certification."

COSTS

Costs to appellant.